## PENN MUT. LIFE INS. CO. v. FORCIER et al.

### No. 11119.

Circuit Court of Appeals, Eighth Circuit.
April 26, 1939.

Rehearing Denied May 13, 1939.

James C. Jones, Jr., of St. Louis, Mo. (Lon O. Hocker and James C. Jones, both of St. Louis, Mo., John M. Huebner, of Philadelphia, Pa., and Jones, Hocker, Gladney & Grand, of St. Louis, Mo., on the brief), for appellant.

W. H. Woodward, of St. Louis, Mo. (John F. Evans, of St. Louis, Mo., on the brief), for appellees.

Before STONE, GARDNER, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This is an appeal from a judgment for the defendant in a suit brought by the insurance company under the Declaratory Judgment Act. Judicial Code, Section 274 d, 28 U.S.C.A. § 400. Diversity of citizenship is the basis of jurisdiction. In its petition the company prayed the court to adjudicate and determine whether a policy of life insurance issued by it February 20, 1929, for $40,000 upon the life of Guy S. Forcier in the state of Missouri was in force on April 5, 1936, the date of insured's death, and to declare and adjudicate the rights and obligations of the parties under the policy. The defendant is the beneficiary named in the policy. In her an-

swer she joined with plaintiff "in asking the court to declare the law under the facts as set forth."

The appeal presents three questions for determination. They are: (1) Had the policy lapsed for non-payment of premiums before the death of the insured? (2) Had there been a valid surrender and release of the policy prior to insured's death? and (3) Was the judgment appealed from authorized under the pleadings?

It will help to single the attention upon the separate issues to state the pertinent facts in connection with the discussion as we go along. The ultimate facts are not in dispute.

1. Had the policy lapsed? The insured made application to the appellant on February 16, 1929, for an ordinary life policy for $40,000. The policy was issued and dated February 20, 1929. It was delivered and the first premium paid March 18, 1929. Premiums were payable by the terms of the policy on February 20th. The policy provided for 31 days of grace. The premium due February 20, 1936, was not paid and the insured died on April 5, 1936.

The disputed question is whether the premium period began to run on February 20, the date of the policy, or on March 18, the date of its delivery and the payment of the first premium; if on the 20th of February the policy had lapsed on April 5, the date of insured's death, but if on March 18 it was in force, because death in that event occurred within the grace period.

The application, expressly made a part of the contract, provided that "If the premium on the insurance herein applied for is not paid at the time of making this application, the contract of insurance shall not be in force unless or until a policy shall be issued and delivered to me and the first premium thereon actually paid during my lifetime and good health."

The policy contained the provision that "The insurance under this policy is based upon annual premiums payable in advance." It also provided that upon written request payments might be made semi-annually or quarterly. The latter privilege had been taken advantage of by the insured in his lifetime.

The policy contained the further provision that the "policy year shall be computed from the 20th day of February, 1929," and that upon the non-payment of any pre-

mium when due, or within the period of grace, the policy should lapse and be void.

Thus there is presented for construction a contract of ordinary life insurance in which the date of the policy and the date of the delivery of the policy and the payment of the first premium are different. The contract provides, (1) "this policy is based upon annual premiums payable in advance," that is, each annual premium pays for keeping the policy alive and in effect for one year; (2) the "policy year shall be computed from the 20th day of February;" and (3) "the contract of insurance shall not be in force * * * until * * * delivered * * * and the first premium paid," on the 18th day of March.

The contract was made in Missouri, and its interpretation and effect are controlled by Missouri law. Turner v. New York Life Ins. Co., 8 Cir., 100 F.2d 193; Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L. R. 1487; Ruhlin v. New York Life Ins. Co., 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290; New York Life Ins. Co. v. Jackson, 304 U.S. 261, 58 S.Ct. 871, 82 L.Ed. 1329; Rosenthal v. New York Life Ins. Co., 304 U.S. 263, 58 S.Ct. 874, 82 L.Ed. 1330. The trial court, after a careful review of the decisions of the Missouri courts, held that under the law of that state the contract must be construed as fixing March 18 for the beginning of the premium period. The same cases reviewed by the lower court are cited and relied upon by the parties here.

Cases involving the proper construction of life insurance policies containing provisions the same as or similar to the above quoted provisions of the policy here in suit and in which the date of the policy and the date of the payment of the first premium and the delivery of the policy are different have been frequently considered by the Supreme Court and the appellate courts of Missouri. Neither the provisions of the policy under consideration nor the circumstances attending its issue and delivery are uncommon. In construing such policies and in determining their effective premium date the Missouri courts have emphasized two controlling factors: first, the character of the contract, that is whether it provides for ordinary life, term or endowment insurance; and, second, the relative date of the in-

sured's change of age for the purpose of determining the amount of the premium.

The application of these distinctions has resulted in two separate and distinct lines of decision by the Missouri courts. The appellant relies upon one of these lines of decision and the appellees upon the other.

The leading case is the decision of the Supreme Court of Missouri in Halsey v. American Central Life Ins. Co., 1914, 258 Mo. 659, 167 S.W. 951, 952. In this case Augustus C. Halsey made written application to the insurance company on May 24, 1906, for a $10,000 policy. The policy was issued and dated May 31, 1906. It was delivered to the insured and the first premium paid June 5, 1906. On May 31, 1907, the second annual premium was tendered to the agent of the company and refused on the ground that the policy had lapsed. The insured died on the morning of June 5, 1907, and the company denied liability. The policy provided for no period of grace. The application provided that "This application and policy hereby applied for taken together shall constitute the entire contract between the parties hereto." It further provided: "The annual premium to be made payable in advance on the 24th day of May;" and "That there shall be no contract of insurance until a policy shall have been issued and delivered to me when in good health, and the premium paid to said company or its duly authorized agent during my lifetime."

The application further provided that all premiums "shall be annual premiums" and that failure to pay any premium at the time it should become due would render the policy void.

The policy provided that the company "hereby insures the life of Augustus C. Halsey * * * for a period of one year from the 24th day of May, 1906, and in consideration of the further payment in cash of $307 on or before the 24th day of May in every year thereafter" etc. The policy also provided: "The payment of the first annual premium thereon is a condition precedent to the taking effect thereof, and it is expressly agreed that this policy shall not become binding upon the company until said premium is actually paid during the lifetime and good health of the insured."

The insurance company contended that the policy lapsed for failure to pay the premium on May 24, 1907, according to the terms of the policy. The court held that the premium was not due and that there could be no default until June 5, 1907, the anniversary of the delivery of the policy and the payment of the first premium because the policy did not become effective until June 5, 1906, by its terms. In the course of the opinion the court said:

"Under the terms of this contract, which consisted of the application and the policy issued in pursuance thereto, the deceased was clearly insured for one full year from June 5, 1906, to the last minute of June 4, 1907. That being unquestionably true, the tender made of the second premium by the brother of the deceased on May 31, 1907, while the policy was still in full force and effect, was clearly made within the time agreed to by the parties, if the entire contract is to be considered as a whole.

"If this is not true, then, by parity of reasoning advanced by counsel for appellant, the policy was never in force, for the simple reason that the first premium was not paid on May 24, 1906, but was paid on the 5th of June, 1906, the date the policy, by its terms, went into effect. This very act of the parties, under the facts and circumstances in the case, puts a practical construction upon the contract made and entered into between them, namely: That each succeeding annual premium should be paid during the life of the policy, and thereby keep it in full force and effect for the period of time stated therein.

"If this is not the true meaning of the parties, then the appellant is driven to the conclusion that the deceased paid for a full year's insurance; but under the terms of the policy he was only entitled to about 11½ months of insurance."

The decision in the Halsey case has been frequently discussed in subsequent opinions of the Supreme and appellate courts of Missouri, but it has not been overruled. It has been followed by the Supreme Court in State ex rel. Mo. State Life Ins. Co. v. Allen, 295 Mo. 307, 243 S.W. 839; and by the Courts of Appeal in Johnson v. American Central Life Ins. Co., 212 Mo.App. 290, 299, 249 S.W. 115; Schuerman v. General American Life Ins. Co., Mo.App., 106 S.W.2d 920; Chestnut v. Security Mutual Life Ins. Co., 208 Mo.App. 130, 232 S.W. 203; Stout v. Missouri Fidelity & Casualty Co., Mo.App., 179 S. W. 993; Landrigan v. Missouri State Life

Ins. Co., Mo.App., 234 S.W. 1042; and others. In the case of the National City Bank v. Missouri State Life Ins. Co., 1933, 332 Mo. 182, 57 S.W.2d 1066, 1068, the rule established by the Halsey case is said to be "that, if the policy provides for the payment of premiums annually, semiannually, or quarterly, on or before certain days, occurring periodically after the date of the policy, and if the policy further provides that it shall not take effect until it is delivered and the first premium paid, and if in a given case a policy is delivered and the first premium is paid on a day subsequent to the date, then in the event of an issue of liability for want of timely payment of premiums, the premium paying periods are to be determined from the date of delivery of the policy and of payment of the first premium."

This interpretation of the Halsey case was repeated by the Supreme Court of Missouri in Tabler v. General American Life Ins. Co., 1938, 117 S.W.2d 278, 281. It is obvious that the instant case falls squarely within the rule of the Halsey case, unless its facts bring it within some rule established by the later cases.

The cases in which the same or all of the above quoted policy provisions occur and which have been distinguished from the Halsey case hold that the effective premium date is the date of the policy and not the date of its delivery and of the payment of the first premium. In these cases the features of the contract on which they are distinguished from the rule in the Halsey case are: first, where the policy provides for term insurance instead of ordinary life and the parties agree that the premium paid will carry the insurance only to a definite future date; and, second, when the policy is predated for the purpose of giving the insured a lower rate on account of change in his age. Both these conditions were present in the leading case of Prange v. International Life Insurance Co., 1931, 329 Mo. 651, 46 S.W.2d 523, 80 A.L.R. 950; and one or both of them have been recognized as controlling in many cases since. National City Bank v. Missouri State Life Ins. Co., supra; Medlin v. American Bankers' Ins. Co., 227 Mo.App. 705, 59 S.W.2d 738; Petersen v. Metropolitan Life Ins. Co., Mo.App., 84 S.W.2d 157; Vail v. Midland Life Ins. Co., Mo. App., 108 S.W.2d 147; Lacy v. American Central Life Ins. Co., Mo.App., 115 S.W. 2d 193; Tabler v. General American Life

Ins. Co., supra, and others. Another situation suggested in the Tabler case, supra, which may be distinguished from the facts in the Halsey case, occurs where the policy provides for endowment insurance. In this situation the court indicated that when the interest value of the earlier endowment maturity more than compensated for the loss of the proportional part of the premium money due to reducing the length of the first premium period, the policy would be construed to give the insured the advantage of the earliest settlement at the end of the endowment period. In all these cases relied upon by appellant, however, the courts of Missouri recognize the authority of the rule of the Halsey case and carefully distinguish it. Clearly the instant case can not be distinguished from that case on any ground suggested by any lated decisions of the Supreme Court of Missouri.

The appellant, in reliance upon Scotten v. Metropolitan Life Ins. Co., 336 Mo. 724, 81 S.W.2d 313, and Evans v. Equitable Life Assur. Soc., Mo.App., 109 S.W.2d 380, contends that, conceding the case comes within the rule in the Halsey case, the court is bound by the construction placed upon the policy by the parties; that premiums had been paid and received prior to 1936 on February 20th; and that such payments show conclusively that the parties intended the premium period to run from February 20th and not from March 18th.

The difficulty with appellant's argument upon this point is that the court found and the parties stipulated that the appellant and the insured were acting under a mutual mistake of fact and law in assuming that the policy was delivered and became effective as of February 20, 1929, and without any knowledge that it was not delivered by appellant's agent until March 18, 1929. The Scotten case, supra, is not, therefore, applicable. The mistake of fact doctrine was not considered in that case.

It is further argued that the reserves under the policy accumulated from the date of the policy, and that this was a benefit to the insured which takes the case out of the rule of the Halsey case. This observation is not persuasive. The appellant was not bound by the contract at all until it was "in force," and it contains no provision, as there was in some of the cases cited by appellant, requiring that it relate back of its effective date for any purpose.

The policy can not be distinguished from the policy in the Halsey case on this ground.

Upon the authority of the decisions of the Supreme Court of Missouri, supra, we hold that the policy had not lapsed for non-payment of premiums at the time of the death of the insured.

2. The release. The second contention of appellant is that there had been a valid surrender of the $40,000 policy prior to the death of the insured and that the company was thereby released from all liability thereon. The facts upon which this contention is based are as follows:

On March 20, 1936, the insured made written application for a reduction of the policy from $40,000 to $15,000. The application contained this provision: "Signatures to this instrument constitute a surrender of all right, title and interest in the above ($40,000) Policy in consideration of receiving from the Company a new Policy containing the above changes."

On that day the insured delivered the $40,000 policy to the appellant, and on March 27, 1936, the appellant issued to the insured a policy for $15,000 bearing the same number as the old policy and in the same form except as to amount and corresponding reduction in premiums. The specified date for the payment of the quarterly premiums was the "20th day of May, August, November and February in every year until the death of the insured."

Following the death of the insured the appellees made demand for payment under the $40,000 policy. The appellant paid $15,000 to the beneficiary, less some indebtedness due the company, but with the agreement that it should be without prejudice to the claim under the $40,000 original policy.

The petition of the appellant substantially sets forth the foregoing facts with a statement of the claims of both parties in regard to the effect of the transaction. The answer alleges:

"Referring to paragraph 12 of plaintiff's petition, defendants state that the plaintiff and Guy S. Forcier and the defendants were acting under a mutual mistake of fact and of law in assuming that the policy was delivered and became effective as of February 20, 1929, and without any knowledge of the fact that it was not delivered by plaintiff's local agent until March 18, 1929.

"Defendants state that it was only subsequent to the death of Guy S. Forcier that the defendants and the plaintiff discovered that the records of the plaintiff showed that the premium was paid and the policy delivered on March 18, 1929. In order to clarify this statement, defendants state that they knew nothing touching the circumstances of the date of the delivery of the policy and assumed that it had been delivered on February 20, 1929, the date of the policy. Obviously, however, Guy S. Forcier at one time must have known that the policy was delivered to him on March 18, 1929, instead of February 20, 1929, and plaintiff obviously at one time knew that fact, but, in connection with the transaction under which the policy was reduced to Fifteen Thousand Dollars ($15,000.00), neither Guy S. Forcier nor the plaintiff nor these defendants took this fact into consideration, but, on the other hand, all acted upon the assumption that February 20, 1929, was the premium anniversary of the policy."

No reply was filed. The trial court found that these allegations of the answer were not denied. And upon the trial it was stipulated that the facts stated in the petition and in the answer are conceded by both parties.

The appellant's contention is that the release and surrender of the $40,000 policy was valid; that the only mistake was one of law as to the construction of the contract, and that a court will not grant relief for such a mistake. The trial court concisely stated his finding and conclusion upon this point as follows:

"In the case at bar the insured executed the release and relieved the company of the responsibility of paying his beneficiary $40,000 upon the assumption that the policy had been delivered on February 20th, and that the legal effect of the application and the policy required the payment of the premium on February 20th 1936. Insured and plaintiff both assumed that the insurance had lapsed and the period of grace would expire on March 21, 1936, when in fact his insurance did not expire finally until thirty-one days subsequent to March 18, 1936. It cannot be questioned that the plaintiff was proceeding upon the theory that the period of grace

would expire thirty-one (31) days subsequent to February 20, 1936. It has always made that contention and it is now urging it with vigor and earnestness.

"Since the release was executed through a mistake as to a mixed question of fact and law, it is not a bar to recovery."

The court's finding and conclusion are fully supported by controlling authorities. New York Life Ins. Co. v. Gilbert, 215 Mo. App. 201, 256 S.W. 148; Berry v. Continental Life Insurance Co., 224 Mo.App. 1207, 33 S.W.2d 1016; In re Smith-Flynn Commission Co., 8 Cir., 292 F. 465; 13 C. J. 379; 53 C.J. 1216; Snell v. Insurance Co., 98 U.S. 85, 25 L.Ed. 52. The ruling of the trial court on this issue was correct.

 3. The judgment. Finally, appellant contends that the court was without jurisdiction to cancel and rescind the agreement of the parties expressed in the written application of the insured, supra, for a reduction of the amount of the policy and the surrender "of all right, title and interest" in the old policy because the appellees did not by cross bill or otherwise ask for rescission. It is insisted that a release is valid until it has been set aside in a suit brought for that purpose. This suit was brought by the appellant under the Declaratory Judgment Act, supra, and the decision of the Supreme Court in Ætna Life Insurance Co. v. Haworth, 300 U.S. 227, 244, 57 S.Ct. 461, 465, 81 L.Ed. 617, 108 A.L. R. 1000, is relied upon. It was there said: "But the character of the controversy and of the issue to be determined is essentially the same whether it is presented by the insured or by the insurer. * * * It is the nature of the controversy, not the method of its presentation or the particular party who presents it, that is determinative."

Instead of sustaining the contention of appellant the Haworth decision compels an affirmance of the trial court. If the appellees did not by cross bill demand a cancellation of the release, it was unnecessary. The appellant presented the issue squarely and asked the court to declare and adjudicate the rights and obligations of the parties completely. This was all that was necessary to confer jurisdiction upon the court. Ætna Life Insurance Co. v. Williams, 8 Cir., 88 F.2d 929. The judgment was within the issue tendered by the appellant, and it can not complain.

The judgment appealed from is affirmed.

GARDNER, Circuit Judge (concurring specially).

I concur in the result. On the issue as to whether the policy had lapsed, I prefer to base my conclusion on the rule that the language of the insurance contract here involved being ambiguous, we should adopt that construction which is most favorable to the insured, and there being an inconsistency in the provisions of the contract, we should give effect to the provision which creates liability. Prudential Ins. Co. of America v. King, 8 Cir., 101 F.2d 990, and cases there cited.